Brown v. Sommers and we also have Lennox v. Sommers and we hear first from Ms. Eisen for Rachel Brown. Morning your honors. My name is Mindy Eisen and I am here with my Also with us in the consolidated effort is Mr. Ferg Cribbs who represents Judy Lennox, the personal representative. Because of the time and splitting of the time, Mr. Cribbs is going to address most of the issues on the exemption issue brief, which is the brief that I call the Lennox brief, and I'll address the issues with Ms. Brown against the trustee Ron Sommers and the estate. Since you've read the brief, you know that this case involves the widow and surviving children's rights to a family allowance. In this case, Ms. Brown had two children with Michael Brown who were both minors and he moved to Florida to file bankruptcy merely to gain an advantage in his divorce. He bought property in Florida in contravention of a Florida court of a Texas state order in his divorce case here and did everything in his power to try to defraud Ms. Brown through his actions. Now are you arguing for the cash in lieu of homestead also or just the family allowance? The family allowance and the cash in lieu of the homestead as well, your honor. The bigger part of it is obviously the cash in the family allowance. Both Judge Bohm and Judge Atlas. Judge Bohm felt he did not have the authority to make a final decision. He entered findings of fact and conclusions of law and sent it up to Judge Atlas. Judge Atlas found that Ms. Brown and her children were entitled to a family allowance but basically applied Florida state law rather than Texas. The only two cases and the only case that really remotely deals with the family allowance is the Texas Court of Appeals case, Chapa Garcia, which was cited by Judge Atlas. If you read the Chapa Garcia case, the Chapa Garcia case basically says that you need to look to the restatement second of the conflicts of loss to decide which state applies. And it is our contention that neither Judge Bohm nor Judge Atlas did that. Because if you look at the factors under the restatement second of law, you clearly see that Texas was the overriding state and that Texas law should apply. But if you look to the law of the domicile, which is what bankruptcy court held, and he made findings that Brown was domiciled in Florida at the time of his death, right? He, yes, he sort of said that he was domiciled, but I don't think that his analysis, I think his analysis is flawed as to the domicile. Because the factors of Mr. Brown, for exemption purposes, Mr. Brown, when he moved to Florida and he filed bankruptcy down there, the bankruptcy judge in Florida, when he dismissed the case, said there had to be a CRO appointed, a chief restructuring officer. The chief restructuring officer was appointed and was operating under Texas law to govern Mr. Brown's affairs, which means he was still under a Texas receivership even though he was, quote, living in Florida. How long did he live in Florida before his death? He moved to Florida in 2012. And died? In 2014. And so, for exemption purposes. He bought a house, didn't he? A big house? In contravention of the Texas Temporary Act. He bought a house and lived in the house that he bought. Well, the house that he bought was not bought in his name. It was bought in a corporate name. Anyway, we've got findings that he was domiciled in Florida. So you've got a uphill battle on that as far as finding clear error in that conclusion, don't you? I don't think so, because first of all, under Texas law, the domicile of the decedent doesn't necessarily control a family allowance because there's really been no case decided by the Texas Supreme Court on that issue. I thought there was a Texas Court of Appeal that helped. There was a case, Morby, but it did not deal directly with the family allowance issue. And so, in dicta, it said that the domicile of the decedent controlled, but it is a Texas Court of Appeals and not the voice of the Texas Supreme Court. But it was dealing with some other kind of probate allowance, wasn't it? It was dealing with a probate issue, Your Honor, but not the family allowance. And it also predated, the Moore case predated the restatement second of the conflict of laws, which was what was reflected upon by the other Texas Supreme Court in Chaffet v. Garcia, which was more of a family allowance case. And in that case, if you read Chaffet v. Garcia, all of the factors in there, their case, the facts in Chaffet v. Garcia were basically the opposite in this case. You know, if you look at the cases that were cited by Moore and relied upon Moore, which were the Alston case and the Greene case, the underlying theme in all of those cases is that we don't reward gamemanship because they were all ones where the widows would try to move to Texas to take advantage of the beggar allowance rather than the state they were living in. You have just the opposite in this case. You have a widow and her surviving children who have a husband who's moved in contravention and bought property in contravention of her temporary orders in the bankruptcy to try to defraud her, has moved to Florida in an attempt to defraud her, and he files bankruptcy. The bankruptcy gets refiled here in Texas. A trustee takes over. The bankruptcy case has millions of dollars in it, and the widow and the two surviving children are left with nothing, and then the bankruptcy court says, yeah, she gets a family allowance, but it has to be $18,000 under Florida instead of the terms in which Texas, which is the only state she and her children have ever lived in, governed the family allowance. And so, therefore, she, you know, she is left virtually with nothing. She was living in a house, and under Federal Rule 1016, the bankruptcy should have continued as if he had not died, which meant she was entitled to the support payments that she was getting under the temporary orders. Those ceased when he died, and Ms. Brown made the decision that because we thought that there was a family allowance allowed, that would compensate her for the year following the bankruptcy. She got neither from the bankruptcy court. So it flies in the face of the Texas state policy to take care of their widow and children. Here you have a widow and children that were virtually going to be put out on the street because the trustee wasn't paying the principal of the house, as the remainder man was supposed to. He wasn't paying support payments to her, and she had no income and no assets, because they were all property of the bankruptcy estate. So, therefore, you know, the— The question turns on what law governs, right? What's the choice of law? Right. Under the conflict, second laws of—I'm sorry, the restatement, second laws of conflict. If that applies, I don't know that the Supreme Court has ever really adopted the restatement of conflicts in probate matters. The Texas Supreme Court has spoken on none of these issues, which is why we have a motion to certify the questions, if this court feels like it, to the Texas Supreme Court, because all you have is one court of appeals decision after the restatement was put in that says it applies. And that's the Chaffin-Garcia case. So there is no controlling, real controlling law in Texas, because the cases that were cited like Moore and Moore were back in the 1890s, which was before the restatement of second. Moore was before the restatement, second of conflicts of law. And that appears to be the controlling body of law, but the Texas Supreme Court has not spoken on it. You're correct, Your Honor. And we do have a motion pending that was carried with these briefs for certification of that particular question to the Texas Supreme Court. If you look to the restatement, second, and the factors of the restatement, second of conflicts of law, the fifth factor that's enumerated there is a very important factor, which states that where the policies of the interested states are largely the same, but where there are nevertheless minor differences between their relevant local law ruled, in such instances, there is good reason for the cart toppling the local law of the land of the state, which will best achieve the basic policies of the underlying particular facts involved in the case. Under this philosophy, you have a widow and two children who have never been to Florida, have never had any nexus with Florida, have lived a lifestyle in Texas in which the Texas Estates Code allows her for a year after the bankruptcy, I mean, a year after the probate or the death, to live in the same type of lifestyle that she has been living in. Yet, she doesn't get that because of the bankruptcy and the bankruptcy estate taking all of the assets. The lawyers and the bankruptcy trustee get millions and she gets nothing. That's not really an equitable or fair result that the bankruptcy code has promoted to get. I know that one of the arguments put forward is, well, you can only look to the probate state for the assets. This court has held that that's not correct. In Sidon v. South Lynch & Nails, Inc., in this court, the Fifth Circuit said, it would be unconscionable for a court of a bankruptcy upon the death of the husband to take possession of all his assets without setting aside his exempt property to those entitled to it and without allowing the widow a year's support in accordance with the state law. And the example they gave in there is if there's only corporate stock, which is not exempt property, it can be set aside and sold to pay the family allowance. So it could look to the bankruptcy court for the family allowance, and this is an estate that is not insolvent, that does not have very little money, that creditors would not be really harmed by giving her her $496,000 allowance. Are you going to discuss the snapshot rule at some point? I'm sorry, Your Honor, I missed part of that. Are you going to discuss the snapshot rule at some point, that the exemptions are not relevant in the first place because he was alive at the time when the bankruptcy was  Mr. Cribs, I'm sorry, is going to address that issue, Your Honor. Basically, with regards to Ms. Brown's right to the allowance in lieu of the homestead, that is an allowance, and by denying the exemptions under Texas law of the allowance in lieu of homestead that was there at the time of the filing of the bankruptcy, which is a substitution, I believe, from the snapshot rule, you can substitute the collateral, and it was a substitution. They have effectively denied Ms. Brown and her two children the right to her homestead. She did not get any type of homestead allowance. The homestead was underwater because of the trustee's failure to pay the principal balance on the remainder when he passed away. You can leave the division of argument the way that you had it. I can wait. Basically, in this case, other than the question of the conflicts of law, I don't think there's a fact issue as to the amount she would be allowed under Texas law for her family allowance. Judge Boehm, in his filing of the fact, found she was a credible witness and found that her $496,000.80 as a family allowance was reasonable under Texas law, but found just that Texas law did not apply. So it boils down, I think, mainly to the one issue is whether or not you apply the conflict of law, restatement of laws, which I think you have to after Chaffett-Garcia, or else at least allow the Texas Supreme Court to rule on that issue. Unless there are more questions? There's no doubt what Florida allows. There's no contest about that. No. Florida law allows $18,000, no homestead exemption. Thank you very much. You saved some time for rebuttal. All right. Mr. Cribs? May it please the Court? I'm Ferdinand Cribs. I'm here on behalf of Judy Lennox, the personal representative of Michael Glenn Brown, deceased, she was appointed by the bankruptcy court after Michael Brown died during the course of the bankruptcy proceeding. At the time— You stand in the shoes of the debtor, as I understand it. Sort of, yes, sir. And Section 522 is the section that controls your rights. That is correct. That is correct, Your Honor. 522b3a says that you have to look to the law of the state where the bankrupt debtor lived in the 180 days prior to the two years after moving there. And there's no doubt that's Texas? There's no doubt that's Texas. As a matter of fact, the trustee filed a motion to disallow Michael Brown's exemptions he had in Florida state law, and the Court agreed with that, and the Court rightfully agreed with that. The only question—I think we're getting back to Judge Saffer's question about the snapshot rule. The snapshot rule—may I say that when we first filed an exemption on behalf of Michael Brown, we did not file an exemption for his exempt homestead. We learned later that there was no equity in that property. It was posted for foreclosure and ultimately foreclosed. We amended our schedules to provide that we elect the cash alternative to the homestead because he had no homestead left and because he had died. Now, we take the position—we were guided by this Court in the Zeidman and Frost case. Both Zeidman and Frost said you look to all of the laws of the state in which the debtor lived to determine his right to exemptions. The Zeidman and Frost case, of course, dealt with the exempt proceeds after the sale of a homestead in Texas that were exempt for the statutory period of time. We contend that there was a triggering event after—well, in Frost, there was a triggering event after having filed the case, and that was the sale of the homestead. The proceeds didn't exist at the time the case was filed. Okay, let me tell you the way—the other side of that is under 522, the cases seem to be under that rule and interpreting that rule seem to say that you stand in the shoes of the debtor. And to determine whether you're entitled to exemptions, you've got to look to see whether the debtor was entitled to the exemption at the time of filing. And here what you're claiming is an exemption under the probate code, which would only apply if he were dead and he was well alive when he filed the bankruptcy petition. No question about that. Our position is that we did file an exemption for a real property. And this—because there was no equity in it, because it was foreclosed, we're entitled to, in our view, the cash alternative to that real property homestead, because in our view, it grows out of the real property. It's just an extension of it. It's part and parcel of it. Now, I looked in your brief for some authority for that, and I didn't see it. There is no authority for that, Your Honor, that I'm aware of. But that is—if you look at both Frost and Zeidman, Frost and Zeidman both say that—well, in Frost, the court said it simply isn't fair to allow an exemption to exist where—in bankruptcy, where you wouldn't get it out of bankruptcy. And I think we have just the opposite here. Here, the debtor is not getting an exemption, whereas if he had not been in bankruptcy, he would get an exemption. Except I didn't see a case that had facts where you were eligible at the time of the filing, but later circumstances took that away. I can't point to a case, Your Honor. We are not aware of a case. And that's part and parcel of why we're here. We believe that, as in Frost, the triggering event after the filing of the case was the sale of the property. In this case, the triggering event to having the right to an additional exemption claim arises out of his death, leaving a piece of property that ultimately got foreclosed. And in our view, they're not dissimilar. They are just—in Frost, as you well know, there was a homestead, there was a sale, there was proceeds. But the proceeds didn't exist at the time the case was filed. In our case, there was a homestead, there was a death, and the homestead got foreclosed. And so I don't see it as being any different than the proceeds situation. I understand the necessity for the snapshot rule, but in the strange, kind of bizarre circumstances that exist in this case to begin with, maybe what we're asking is a very narrow ruling. But that's what we believe. And I can't—in all honesty, I can't point to a case. I don't know that there's been a case anywhere in the country. There are some states that do have cash alternatives to homestead, but I'm not aware of one that came out of a bankruptcy. Okay. Thank you, Mr. Griff. Yes, sir. Okay, Mr. Kincheloe. May it please the Court. I'll divide my argument between the two cases. First, I will talk about case 20034, which is the family allowance dispute, and I'll call that the family allowance appeal. Second, I'll talk about case 20148, which is the exemption claim by Judy Lennox, and I'll call that the homestead allowance appeal. Okay, now on the family allowance, I think the opposing counsel agreed that the issue there is what law controls, what's the choice of law rule. In part, Your Honor. Let me just ask you on that point. On the family allowance, we've got the Moore case that says you look to the law of the decedent's domicile, and counsel points to this Chapo Garcia case. It says that that's a strong indication that Texas, at least I think that's an appellate case too, a strong indication that they've adopted the restatement of conflicts rule. So what do you say to that? I disagree with that argument. I'll read a quote directly from Chapo, which is from the Corpus Christi Court of Appeals in Texas, and the direct quote is, the laws of the domicile of a person who dies in testate control in the secession of movable or personal property of his estate. They were not dealing with real property? Correct, Your Honor. There's no real property at issue in the appeal. It's purely the proceeds of personal property. Okay. And I also disagree. Is there some dicta about the restatement of torts being the rule, I mean restatement of conflicts being the rule? Not that I've found in the case. I think we just disagree on the ruling. I think my recollection of the case is there may have been a discussion of the factors, but as far as what controls the disposition of probate estate assets, it is uniform and has been uniform in Texas since the mid-19th century, and that is the law of it exceeds domicile controls. What do you have besides more that says that? There's also the Alston case, Hopkins. Are these all courts of appeal cases? No, Your Honor. These are Texas Supreme Court cases. Alston is from 1873. Hopkins is from, I believe, the 1850s, and there are a number of other cases around this time, and the facts are pretty much the same, different iterations, but it is a person is domiciled in a state and then moves either into or out of Texas, becomes domiciled in the new state, and then dies shortly thereafter. And the Texas Supreme Court cases are uniform, that the law of it exceeds domicile governs the disposition of those probate estate assets. Why wouldn't the, I mean, I know the Texas Supreme Court has adopted the restatement in many areas. Why wouldn't they adopt the restatement of conflicts? In this particular issue, the choice of law rule for this situation is very longstanding. It predates the Constitution. It goes back to mid-18th century British common law. There are a long line of cases, and it's due to this old principle that the domicile or the location of a person's personal property follows his or her domicile. And the effect of that is that when someone dies, for the last 250 years, the law of their domicile has governed the disposition of their probate estate assets. Well, Counselor, the problem pointed out in the briefing is just how old this law is. That's one way to say it's well settled, but actually it was settled well ago. And whether still the law is the question before us, doesn't that suggest merits to certify on the question? Mr. Supreme Court Justice, you haven't considered this in 150 years. How about giving us another look at it? I disagree, Your Honor. The rule governing certification is whether there's Texas Supreme Court authority. It's not conditioned on the age of the authority or whether there are reasons to reconsider it. The rule is whether there's existing authority, and there is. And as the Garcia-Chapa case points out, that authority has withstood the test of time. The other issue on the Family Allowance Appeal, which was not brought up in the appellant's argument, is a jurisdictional issue. There are two separate final orders, one by the bankruptcy court and one by the district court. The bankruptcy court entered a final order saying that none of the assets of the bankruptcy estate can be used to pay this family allowance claim. No one ever filed a notice of appeal from that order, so the only issue that was placed before the district court is whether the claim can be made against the probate estate. Therefore, this court is deprived of jurisdiction to reconsider the merits of the bankruptcy court order, refusing to allow bankruptcy estate assets to be used to pay the family allowance claim. Didn't the judgment purport to cover the whole case, though, the judgment that the district court entered? No, Your Honor. The district court was very clear on the final order it entered. It said that the claim is allowed in the amount of $18,000 and may be paid from the probate estate. It made no mention of the bankruptcy estate whatsoever. If we agree that there needed to be a notice of appeal on that part of Judge Bohm's order, where does that leave us on the rest of this question regarding the probate estate? It's basically beyond our jurisdiction to consider his ruling that it cannot come out of the bankruptcy estate, but what is left of the overall issue then? There's still this choice of law rule issue because the district court was exercising bankruptcy jurisdiction under 28 U.S.C. 1334. There's still this issue of what is the proper choice of law rule for a federal court to apply when exercising that jurisdiction, and that's something this court has expressly not decided. In the MC Asset Recovery v. Commerce Bank, the court limited it and said the court has not identified whether it is the independent judgment test or the form states choice of law rules. The trustee's position is that either test leads to Florida substantive law. Under the independent judgment test, there's a number of factors, such as the needs of the interstate and international system, which again goes back to this very old line of cases, which the U.S. Supreme Court has called part of the law of nations, that it's so uniform, it's so well accepted that pretty much everybody follows this rule. The form states choice of law rule, we have a dispute, but the trustee's position is that there are these old Texas Supreme Court cases which have been followed as recently as 2006 by appellate courts saying that the substantive law of a decedent's domicile controls the disposition of probate estate assets. As the court pointed out earlier, the district court did find, as did the bankruptcy court, that Michael Brown was domiciled in Florida when he died, and that finding is subject to clearly erroneous standard of review. The Florida law caps the family allowance claim at $18,000. That is a decision made by the Florida State Legislature. They have weighed the equities, and they have decided that $18,000 is a sufficient cap for the purpose of this statute. If the court has no additional questions about the family allowance appeal, I'll move now to the homestead allowance appeal, which is case 20148. There are two ways to view the relief requested by Miss Lennox. The first is under 522, which is what the court was discussing earlier, and which is the position taken by Miss Lennox. The second way to view this relief is under Section 502 of the Bankruptcy Code as a traditional claim, which is the analysis that the bankruptcy court engaged in. As an exemption, the snapshot rule does apply. This is out of the White v. Stump case from the Tech Committee. Wouldn't 522 apply to the Lennox claim? Yes, Your Honor. I mean, as I understand it, he stands in the shoes of the debtor. So, I mean, wouldn't 522 then apply to him? I spoke too soon. It would apply to what Miss Lennox is able to claim. It does not apply to what Miss Lennox did assert. It wasn't briefed.  But for here, I wasn't able to find any appellate-level cases discussing whether relief requested is a claim or an exemption. It seems that most of the time, parties can agree. The thing about exemptions, though, is if we look at exemption statutes, whether state law or federal law, they are all dependent on the existence of some asset within the bankruptcy estate. So, for example, the traditional homestead exemption requires a home to be in the estate. The traditional exemption for a car requires a vehicle to be in the estate. This is different because Miss Lennox is making, is requesting this relief without regard to whether there's a home in the estate. She's just saying, I'm entitled to these funds. As a matter of fact, she's arguing because there is not a home in the estate. She's saying that these funds are just a substitute for the raise, the home. That's what she's saying. Exactly, Your Honor. And why is that not a good argument? Well, I don't think it's a good argument to be made under Section 522 because it's not an exemption as 522 contemplates. She's not pointing at identified property within the bankruptcy estate and trying to accept that from the claims of creditors. Under Section 502, I also don't think it's a sound argument because we go back to the choice of law rule issue. It's what choice, what substantive law would govern such a claim, and then we go back to the independent judgment test or the Texas choice of law rules, either of which lead us to the substantive law of a decedent's domicile. Here, again, is Florida. So Florida law would govern such a claim, and Florida law does not provide for an allowance in lieu of homestead exemption. Confusing in the choice of law rules. Under 522, because of that 901-day rule, Texas law unquestionably applies. Is that right? If it is an exemption. And that's part of the dispute is, is the relief requested by Ms. Lennox an exemption or a claim? Certainly, if it is an exemption, then Texas law would govern, but it would be subject to the snapshot rule, which would preclude the use of probate exemptions. In the alternative, if it's a claim under 502, then we're not subject to the 522 statutory choice of law provision. And instead, we're back to, are we going to apply independent judgment test or the So there, you're saying Florida law, the domicile of a decedent controls that? Yes, Your Honor. If it's a claim under section 502. OK. Your Honor, if the court has no further questions, I'll yield. Let me just ask you one kind of detail. On the allowance under Florida law, as I understand it, the bankruptcy court ordered that paid out of the bankruptcy estate directly to Rachel. Is that, is my memory right about that? No, Your Honor, that's not correct. OK. The bankruptcy court on the family allowance claim, it bifurcated the ruling. It decided that it had statutory authority over the whole dispute, but it only had constitutional authority to enter a final order with respect to the claim made against the bankruptcy estate. What did the district court do then? The district court ordered it to be paid only from the probate estate. The district court did not consider the issue of whether the claim was payable from the bankruptcy estate. Did Judge Atlas at all refer to that final order that you say wasn't properly appealed from the bankruptcy court where Judge Bohm said none of this could come out of the bankruptcy estate? Did she refer to it at all? In her order, it did not refer to that. In the memory and opinion, I apologize, I can't remember completely, but I'm pretty sure it did not refer to the order that was entered by the bankruptcy court. Could you address the relevant significance of one of the issues in, I forget what you called it, the appeal case number on failure to include or strike certain documents from the record? What's the importance of that issue or relevance of it? I don't know that it's really relevant to the merits of the decision. The trustee and Ms. Brown and Ms. Lennox all tried this case with great vigor. Everybody fought very hard over what was included in the record. The trustee moved to strike certain items from the appellate record because they weren't part of the evidentiary record, and his thought was to keep the appeal as manageable as possible. Even if those additional items come in, it does not change the substantive merits of the underlying decisions. What part of the case are those documents potentially applicable to? Those documents would be relevant to the Homestead Exemption Appeal, or the Allowance in the Move of Homestead, so that would be the Ms. Lennox appeal. The district court denied a similar motion, so that issue is not relevant to the family allowance claim. All right. Didn't the district court authorize a payment of the $18,000 directly from the probate estate to Rachel Brown? Yes, Your Honor. Now, how could the bankruptcy court or the district court in an appeal from the bankruptcy court tell the probate court what to do with money in the registry of his court? I don't know, Your Honor. I just—that just struck me as odd that he'd be telling—you know, there may be—I don't know if the payment to Rachel primes everything that's in the probate court. It may. Do you know? I don't know. I will tell the court, and I think we're venturing outside of what was briefed, but we did challenge the bankruptcy court's statutory jurisdiction to make any rulings as to what to do against the probate estate. The bankruptcy court disagreed. It determined that in this instance it did have statutory jurisdiction to make that ruling. The trustee has not briefed it on appeal, primarily because the trustee's major concern is that the bankruptcy court's final order—or his major concern with respect to the family allowance claim is that the bankruptcy court's order stay intact, that none of the bankruptcy estate assets be used to pay the family allowance claim. Beyond that, it's the trustee's interest, and what happens to the probate estate assets is fairly limited. Now, which ruling did you say that no proper notice of appeal was filed in? The bankruptcy court's final order, which determined that no assets of the bankruptcy estate can be used to pay the family allowance claim. Okay. So what's the status of the case? The bankruptcy case overall, Your Honor? It is nearing the end. There are a few adversaries pending. This appeal is pending, and then there are some claim resolution issues. It's really difficult to predict how long these cases last. It is probable that this case will be going on for another 12 months, give or take three. Okay. Thank you. Thank you very much. Thank you, Your Honor. Okay. Ms. Isen, back to you. Your Honor, first I want to address, I don't believe there was a final order saying that the assets could only be paid out of the probate case from the bankruptcy court up to the district court. On the family allowance, she took the entire case up because it was referred up to her because he could not make a final order. Well, certainly we'll have to look, but I thought Judge Bohm was fairly clear about that, that he was making a final order as to the assets in the bankruptcy and making recommendations as to the other. It's the way I remember it, but you remember it differently, apparently. There is, yeah, we remember it differently, but in this case, I think you hit it on the nose. There is no probate court. There is no probate case. There was no money to open a probate case. You had so many competing wills that none of the executors under any of those competing wills wanted to file any competing will. When this case, when he died, this case proceeded under Federal Rule 1016 and Marshall v. Marshall saying that the district court and the bankruptcy court could do everything, basically, that the probate court could do. So there are no assets in a probate estate. There are some exempt assets that were set aside. In fact, the trustee agreed to the cash allowance in lieu of the personal property by allowing Ms. Lennox to take $30,000 cash, or $60,000, $30,000 or $60,000 cash, I can't remember the exact figure, cash in lieu of, which is the same statute in lieu of Homestead, $45,000. So the trustee basically talks out of both sides of his mouth. The district court was very clear in that she did evaluate whether they were going out of the probate estate and or the bankruptcy estate, which means she put it at issue, which means it is properly on appeal here. This Court does have jurisdiction over those issues, and that's just a red herring that the trustee is attempting to throw up to this Court. What part of the red herring, the part about whether the decision was final and the bankruptcy court was not appealed, is that the red herring? Yeah, because it couldn't have been a final decision because the family allowance hadn't been decided yet anyway. It would have been interlocutory at best. Well, the family allowance not being assessable against the bankruptcy estate could be a final decision, even if we don't know the amount of it, could it? No, I think it's all part and parcel as to where it can be paid, especially under Seiden because Seiden says it's unconscionable that you can't pay it out of the bankruptcy estate, especially if there is no probate estate, to take it, and I don't think you can have a final order on a partial part of a case without it being interlocutory as to the whole decision. It was all part and parcel of the same motion and the same appeal. Do you have other questions? Why don't you move on? I do. He basically tried to say that there was Texas Supreme Court law. If you look at the Alston and the Green cases, they are not family allowance cases. So they are cases which involve some type of allowance under probate, but not the family allowance as it sits in its present state. And in those cases, in Alston, the family moved back to Texas after the guy's death in another, after the husband's death in another state to gain advantage of Texas exemptions, and they said Texas exemptions weren't allowed. You know, you can't gain the system. In the Green case was whether or not the widow had planned to stay in Texas after she was allowed her homestead allowance, and the court in that case said that the critical question was where the homestead was situated. It didn't matter whether she left after she was given her exemption or not. They were not family allowance cases, nor was Hopkins. Hopkins involved a case where it dealt with a Virginia, the interpretation of a Virginia force-shared provisions for the surviving spouse. It was not an analysis of the family allowance. And all of those cases, including more, predated CHAPA and the restatement of second of conflicts of law. And CHAPA, if anything, would be the most controlling, and if you really look at the Texas law applied in our case, because in that case, it really boiled down to not so much a determination of the family allowance, but whether or not there was a procedural question as to whether or not the choice of law had been raised properly. If you look on page three of our brief, we've outlined what the, of our reply brief, the bank, the district court clearly reviewed everything that he challenges the jurisdiction in, and so the review before this court is proper. Judge Southwick, you asked about the failure to include certain documents. The trustee objected because they were not evidentiary. That is not the standard, and they should have been included, and we did allege that it was error. How does it affect our ruling? Why do we need those documents beside what you brought in front of us? Your Honor, I believe most of those documents are actually in the record on the exemption appeal, which we're semi-consolidated for that. I don't believe it, those documents really affect my issue on the family allowance. Okay. Thank you very much. May it please the Court, I would point out that the distinction between the probate court and the bankruptcy court is not really much of an issue. The United States Supreme Court in Marshall v. Marshall has said that a bankruptcy court has all the same authorities that a probate court can have, with the exception of admitting the will to probate and administering assets that already exist. So the bankruptcy court has all of the authority necessary to deal with matters that might arise in probate or matters that might not arise in probate. So particularly with regard to the Homestead cash alternative, we would argue that even if it's a probate, something that needs to be filed in probate court, the bankruptcy court has every authority to consider it. It is an exemption, and that's an elemental part of a bankruptcy proceeding. Well, as a matter of fact, it's an elemental part of a probate proceeding. Both of them are estates. Both of them have Marshall assets. Both of them consider debts and pay debts and consider taxes and pay taxes and consider administrative expenses and pay administrative expenses. If there's anything left over, it goes to whoever's entitled to it. In this case, there won't be anything left over. There never has been, and there won't be. As I understand it, the Internal Revenue Service has a greater amount of claim than there are assets left in the case. Would IRS prime Rachel? Well, they prime everybody, don't they? Yeah, I think they do, and as a matter of fact, she has her own problem with the Internal Revenue Service because he didn't pay his taxes. But that's back to the cash alternative, and we do understand and appreciate the need for the snapshot rule, but this cash alternative, in our view, is simply a—it's a part of the greater homestead exemption scheme in the state of Texas. You can find law in the state constitution on homestead exemption. You find it in the property code. You find it in the estates code. And in determining exemptions, you can look to all sorts of codes. The insurance code has exemptions in it. There are provisions in the property code that relate to retirement plans and all sorts of other things. So the cash alternative, in our view, is simply an extension of or a part of the greater exemption scheme as provided by the state of Texas. Okay. Thank you, Mr. Griffith. Yes, sir. Thank you very much, counsel. We have your case.